In  The United States District Court
Eastern District of Virginia

DEC − 7 2018

C_____ F_____RT
ALEXANDRIA, VIRGINIA

Consolidated Multi Claims

Ricky Butler,  #254514  plaintiff

Complaint

− Against −

CASE# 1:18-CV-1525
(TSE/JFA)

Jurisdiction: 42 U.S.C 1983,
28 USC 1331, 28 USC 1332,
28 USC 1343(a), 28 USC 1367

Northern Neck Regional Jail,
Northern Neck Regional Jail Board,          [Jury Trial Demanded]
Superintendent Ted Hull, Nurse Hryn,
Deputy Superintendent Back (AKA Major Back),
Correction officer Law, (jr.), Correction officer Law, (Sr.),
Correction officer Buntin, Correction officer Williams,
Correction officer Garner, Sergeant Chatham, Nurse Vaughan,
Sergeant Taylor, Chief of Security Daryl Turner (AKA Captain Turner),
Dr. James Dudley, Luetenant Newsome, Luetenant Luna,
Inmate Services Director Amy Dameron (AKA medical director Amy Dameron),
Emergency Medical Technician Barnes (AKA EMT Barnes),
Emergency Medical Technician Jeter (AKA EMT Jeter),
Emergency Medical Technician Shelton (AKA EMT Shelton)
Mental Health Counselor Keith Johnson (AKA Counselor Johnson)
Correction officer Harris, Correction officer Houchin, Correction officer Gray


Ricky Butler, Complaining of defendants, alleges as follows:

1. That plaintiff's current address is Livingston County −

Jail 4 Court Street, Geneseo, New York 14454;

2. That plaintiff is a citizen of the United States;

3. that plaintiff is a citizen of the State of New York;

4. That defendants are citizens of the State of Virginia;

5. That all of the defendants work address is the same which is Northern Neck Regional Jail, 3908 Richmond Road, Warsaw Virginia 22572;

6. That these claims are brought and this Court has jurisdiction pursuant to 42 USC 1983, 28 USC 1331, 28 USC 1332, 28 USC 1343(a), 28 USC 1367 and that where appropriate this court has original, pendant, diversity and/or supplemental jurisdiction;

7. That venue is appropriate in the Eastern District of Virginia because all of the events giving rise to this complaint happened in Warsaw, Virginia;

8. That where appropriate the amount in controversy exceeds 75 thousand dollars exclusive of interests and costs;

9. That at all times relevant to the events in each of these claims plaintiff and defendants were —

residents of the State of Virginia;

10. that at all times relevant plaintiff was a detainee at Northern Neck Regional Jail housed under the authority of the United States Marshals Service;

11. that defendant Northern Neck Regional Jail duly existing and created under the laws and authority of the State of Virginia;

12. that defendant Northern Neck Regional Jail Board upon information and belief is a board of Supervisors charged creating rules and regulations and standards and appointing the Superintendent;

13. that at all times relevant defendant Dr. James Dudley was a doctor working for Northern Neck Regional Jail as a physician on behalf of inmates at the Jail;

14. that at all times Relevant defendant Amy Dameron was the Director of Inmate Services and was also known as the director of the Jails medical unit;

15. that at all times relevant defendant Keith Johnson was the mental Health Counselor at Northern Neck Regional Jail; and Gray was a Correction Officer;

16. that at all times relevant defendant Law (Jr.) was-

a  correction  officer  at  Northern  Neck  Regional  Jail;

17. that at all times relevant defendant  Law, (Sr.) was a
Correction officer at Northern Neck Regional Jail;

18. that at all times relevant defendant Harris is and was
a correction officer at Northern Neck Regional Jail;

19. that at all times relevant defendant Newsome was a
Luetenant at Northern Neck Regional Jail;

20. that at all times relevant defendant Luna was a
Luetenant at Northern Northern Neck Regional Jail;

21. that at all times relevant Cornelius Jeter was a
Emergency medical technician at Northern Neck Regional Jail;

22. that at all times relevant defendant Buntin was
a correction officer of Northern Neck Regional Jail;

23. that at all times relevant defendant ~~Nars~~ Vaughan
was a nurse at Northern Neck Regional Jail;

24. That at all times relevant defendant Ian Houchin (jr.)
was a correction officer in Northern Neck Regional Jail;

25. that at all times relevant defendant Garner was a
correction officer at Northern Neck Regional Jail;

26. that at all times relevant defendant Barnes was a Emergency Medical Technician at Northern Neck Regional Jail;

27. that at all times relevant defendant Hryn was a nurse at Northern Neck Regional Jail;

28. that at all times relevant defendant Shelton was a Emergency Medical Technician at Northern Neck Regional Jail;

29. that at all times relevant defendant Chatham was a Sergeant at Northern Neck Regional Jail;

30. that at all times relevant defendant Taylor was a sergeant at Northern Neck Regional Jail;

31. that at all times relevant defendant Williams was a correction officer at Northern Neck Regional Jail;

32. that plaintiff brings this consolidated set of related claims for compensatory and punitive damages to redress defendants violations of plaintiff's rights under the Fourth and Fourteenth Amendment, his rights to Equal Protection under the Constitution as well as his rights under Virginia Law

33. The nature of this complaint surrounds plaintiff's mistreatment while an inmate in the punitive segregation unit (AKA "N Pod") of Northern Neck Regional Jail;

34. The problems started around September 12, 2017 or about when jail officials sought to take plaintiff to punitive segregation to start a fifteen day diciplinary sanction;

35. Plaintiff, a mentally ill inmate, refused to go to punitive segregation and instead requested to be placed on suicide watch in a constant observation camera equipped cell due to his suicidal feelings as punitive segregation lacked camera equipped cells;

36. Guards however under authority of Captain Turner told plaintiff that he was not going on suicide watch but instead going to N Pod to do his diciplinary sanction one way or the other;

37. Plaintiff was then forced into a camera-less punitive segregation cell where despite a months long escalation in serious injuries and risk of harm (for instance plaintiff cut his throat twice, hung himself, swallowed all types of objects and jammed all types of things in his body) officials stubburnly continued their denial of constant observation;

38. Plaintiff witnessed all other inmates (99.9% of whom never acted on their threats) that merely verbally professed suicidal ideation and/or thoughts of self harm be promptly placed in a camera-equipped or under some other form of constant observation regardless of any diciplinary status, —

Yet plaintiff ( who was much more dangerous and whom according to many staff at the jail risk and dangerousness was either tied or higher than the most risky and dangerous inmate in the jail's seventeen year history in terms of self injury) was systematically and categorically denied any form of constant observation;

39. Instead Captain Turner, Major Back, Superintendent Ted Hull and Counselor Keith Johnson implemented fifteen minute periodic observation checks (though guards routinely didn't show up for hours) as an alternative and put plaintiff in restraints which he always breached;

40. Plaintiff complained of the inadequacy of the so called fifteen minute checks to mental Health Counselor Keith Johnson, Major Back and Captain Turner starting around September 14th and 15th 2017 or about (and throughout his four month stay in punitive segregation) explaining to them that his modus operandi was to wait until he knew that no one was watching him ( during the intervals between observation checks) and utilize that time to breach his restraints in order to harm himself which they and others witnessed over and over again (often daily and sometimes twice in the same day);

41. In response to plaintiff's complaints Captain Turner told plaintiff that he wasn't leaving punitive segregation no matter what he did to himself, Major Back never gave -

any verbal response and mental Health Counselor Keith Johnson's typical response was either "This is where the Captain wants you" or this is where the Major and Superintendent wants you housed."

42. In addition, on the way to the outside hospital for another self injury in September or October 2017 or about an unsolicited Superintendent Hull taunted to plaintiff "N Pod will be waiting for you when you get back" - ( a statement which plaintiff could only logically infer to have meant - regardless of your hospital injury you're still going right back in a camera less cell' );

43. On December 13, 2017 plaintiff told officer Law, (Jr.) that voices in his head was telling him to do something real crazy to himself wherein officer Law, (Jr.) merely smirked;

44. As soon as officer Law, (Jr.) walked away from plaintiff's cell after his observation check plaintiff gradually begin to tear the duct taped restraint mittens off of each of his hands, a process that took about one half hour for + each hand;

45. At no time prior to or during the time that plaintiff was destroying said restraint mittens did officer Law, (Jr.) attempt to physically and visually inspect and/or assess the integrity of the mittens;   -

46. Plaintiff then first broke the pair of leg shackles connected to his legs, then the pair of shackles that were connected to the back of his bed, a process that took an aggregate of one and a half to approximately two hours that started and ended on officer Laws(jr.) three hour tour of duty;

47. While all this was going on (destruction of mittens and shackles) officer Law,(jr.) not only regularly skipped the fifteen minute periodic observation checks during his tour but did not show up for an hour or so one one ocassion;

48. Even when officer Law,(jr) showed up and saw plaintiff's hands ripped Scott free out of the mittens, he shook his head smirking and casually continued on his way;

49. Despite knowing plaintiffs' well known history of repeatedly breaching his restraints and injuring himself, at no time did officer Law (jr) seek to search plaintiff, his cell or to otherwise secure the area;

50. Officer Law's (jr.) tour ended and he was replaced by officer Harris and officer Law,(sr.) wherein between their observation checks plaintiff used a string from his destroyed mittens to tie around a piece of broken leg shackle;

51. Plaintiff then took another broken piece of shackle-

and jammed it down into his penis and then tied the already stringed piece of leg shackle on to the rear teeth in his mouth then eventually swallowed it then reported it;

52. Prior to telling officer Law, (Sr.) and Harris that he had metal lodged in his throat and penis, at no time did officer Harris or Law, (Sr) attempt to physically and visually inspect and/or assess the integrity of any of the restraints or to secure plaintiff and his cell even though they saw his hands ripped out of the restraint mittens and knew he had a history of breaching the restraints and injuring himself;

53. In addition officers Law, (Sr.) and Harris not only regularly skipped the fifteen minute periodic observation checks but did not show up for over an hour during their three hour tour of duty;

54. At no time prior to, during or subsequent to these incidents did officer Law, (Sr.) or Harris seek to search plaintiff's cell; or his person;

55. Upon information and belief the source being officer Harris Luetenant Newsome was made aware of plaintiff's breach of the mittens;

56. Luetenant Newsome, however, chose to not come to -

the scene until plaintiff told officers what he had done with the metal which was hours later;

57. Major Back, and Captain Turner were wei in the Jail's medical unit when xrays confirmed the pieces of shackle both in plaintiff's throat and in his penis and Nurse Vaughan notified the Jail's doctor, dr. James Dudley but instead of plaintiff being promptly taken to the outside hospital to remove the shackle from his penis (the metal in plaintiff's throat was removed) he was instead wheelchaired back to his cell with Major Back, Captain Turner, Luetenant Newsome, Luetenant Luna and others in tow;

58. Back in N Pod Luetenant Luna then ordered plaintiff to strip naked and to put a diaper on;

59. Plaintiff whom loudly complained of and whom was already in mind boggling severe pain protested to Luetenant Luna that the diaper would press against his injured penis and aggravate the pain but Luetenant Luna (and Captain Turner and Major Back) were not interested;

60. Plaintiff was then brought into his cell wherein his entire torso was duct taped and then he was chained back to the bed;

61. Plaintiff would remain chained and duct taped with

the 4.1 centimeter jagged piece of leg shackle (and subsequently a zipper) in his penis for almost an entire month from December 13, 2017 to January 8, 2018 with absolutely no pain medication or antibiotics or any medical attention whatsoever;

62. Over the course of the next 25 days plaintiff complained to all of the medical staff that entered his cell to provide his daily blood pressure medication including EMTs (Emergency medical technicians) Jeter, Barnes and Shelton as well as nurse Hryn that he was in severe pain from the shackle (and zipper) that was in his penis, that the diaper was aggravating the pain, that his penis was infected and he felt he had a fever and that his penis was burning and that the urine had a foul smell to it which officers routinely commented on and that he recieved no pain medication or antibiotics for his injury;

63. In response EMT Jeter made remarks like "Boy! that has to hurt", "well maybe you should stop sticking stuff in there" and frequently acted shocked that the metal was still in my penis weeks later;

64. An ever quiet and poker faced EMT Barnes never made any comment;

65. EMT Shelton's usual line was that she would relay my concerns to the other medical staff;

66. Nurse Hryn's response would usually either be "I'm only here to give you your medication, you have to take that up with someone else", or "It's not my fault I'm not the doctor;"

67. When I complained to officers Buntin, Thomas, Taylor, Jones, Houchin,(jr.) about the diaper severely aggravating pain from the shackle in my penis and zipper I was told the same line - "you have to wear it, it's per the Major;"

68. At no time did any member of the jail's medical staff including Dr. James Dudley, Nurse Vaughan, EMTs Jeter, Barnes and Shelton or Nurse Hryn ever seek to report, investigate, inquire, diagnose regarding plaintiff's in terms of his injuries;

69. There was absolutely no blood pressure or temperature checks. No vitals, no nothing;

70. Other than the xrays at no time was plaintiff's penis ever even examined;

71. Dr. James Dudley did not ask to see plaintiff although he came to the jail every week;

72. Seeing that he was getting no where with the Jail's medical staff plaintiff did an end run around them and started begging jail guards that he had an o.k. relationship with such as officer's Thomas, Veney (male), Shropshire and others if they could email Inmate Services (and medical Director) Director Amy Dameron and Captain Turner my complaints of pain infection and the fact that the metals were still in my penis;

73. The said officers told plaintiff that they had sent the requested emails and/or left voice messages on Captain Turner's and/or Amy Dameron's telephone;

74. When plaintiff saw Major Back several days or so after the shackle incident and complained about pain, infection and the lack of any medical attention whatsoever she hissed "I'll send you to the hospital when I'm good and ready! Maybe the pain will make you think twice next time!";

75. Almost 30 days later on January 8th, 2018 or about plaintiff was finally taken to Riverside Tappahannock Hospital;

76. Major Back, Dr. Dudley, Captain Turner and Amy Dameron all have a long history of interfering, delaying and/or denying or colluding to interfere, delay and/or deny plaintiff's prompt and proper treatment;

77. For instance, just two weeks prior to the shackle incident plaintiff cut his neck so deep that the white meat hung on November 25, 2017 or about and Nurse Hryn felt plaintiff needed to go to the outside hospital for stitches as well as his blood pressure;

78. An angry Luetenant Newsome, however, told Nurse Hryn that plaintiff was not going anywhere unless major Back first approved it wherein he then called Major Back to report to her what Nurse Hryn was trying to do;

79. When Nurse Hryn attempted to explain to the major her professional opinion of the need for plaintiff to be sent to the outside hospital for stitches and blood pressure the major, who has no medical training, instead told Nurse Hryn to glue plaintiff's cut so as not to have the Jail's officers tied up in the hospital with plaintiff;

80. As a second example on August 11, 2016 when Riverside Tappahannock Hospital unexpectedly tried to admit then tranfer plaintiff (due to the lack of specialist on site as well as the urgency) Jail guards (whom expected plaintiff to be "in and out") angrily objected to the doctors in the hospital then called Captain Turner whom then called (medical director at the Jail) Amy Dameron who then called Dr. Dudley (who is employed by both the Jail and Riverside Tappahannock Hospital) whom then-

unethically leaned on emergency room staff to discharge plaintiff back to the jail despite plaintiff having a razor blade in his anus;

81. Despite the urgency of the situation when EMT Shelton tried to instinctively get plaintiff quickly brought to the Jail's medical unit when he had the shackle in his throat her efforts were cut short by Lieutenant Newsome who told her "he aint going no where unless the major first approves it";

82. Renarrating the Major's admonition of the thousand dollar cost each time an ambulance is called, EMT Jeter, in 2017, told plaintiff that he got "chewed out" by the Major and almost lost his job for calling an ambulance without first getting approval from Major Back;

Cause of Action

83. By their acts or omissions the following defendants created an unnecessary and serious risk of harm, disregarded a serious medical need and/or breached the duty of care owed to plaintiff:

A. As a result of officer Law's (Jr.) deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered

and suffers severe injury to his penis including multiple unsuccessful surgeries, severe, acute and chronic pain, panic attacks, sleepless nights, nightmares, depression, post traumatic stress, bleeding and spasms, impotence violating his Due Process Rights under the 14th Amendment to the U.S. Constitution, and his rights under Virginia Law;

B. As a result of officer Harris's deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and suffers severe injury to his penis including multiple unsuccessful surgeries, severe, acute and chronic pain, panic attacks, nightmares, sleepless nights, depression, post traumatic stress, bleeding and spasms, impotence and penile stricture. violating his Due Process Rights under the 14th Amendment to the US Constitution and his rights under Virginia Law;

C. As a result of officer Law's (Sr.) deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and suffers severe injury to his penis including multiple unsuccessful surgeries, severe, acute and chronic pain, panic attacks, nightmares, sleepless nights, depression, post traumatic stress, bleeding, spasms, impotence and penile stricture violating his rights under the 14th Amendment to the U.S. Constitution and his rights under Virginia Law;

D. As a result of Lieutenant Newsome's deliberate indiffer-

ence, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and suffers severe injury to his penis including multiple unsuccessful surgeries, severe, acute and chronic pain, panic attacks, nightmares and sleepless nights, depression, post traumatic stress, spasms, impotence, stricture, violating his Due Process Rights under the 14th Amendment to the US Constitution and his rights under Virginia Law;

E. Counselor Keith Johnson breached his fiduciary duty of care he owed me for the sake of his bosses. Every thing plaintiff did or said he tried to downplay so as to be able to provide legal cover for Captain Turner's, Major Back's and Superintendent's Hull's unsound & denial of constant observation. As a result of Counselor Keith Johnson's deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and suffers severe injury to his penis including multiple unsuccessful surgeries, severe, acute and chronic pain, panic attacks, nightmares, sleepless nights, depression, post traumatic stress, spasms, impotence, penile stricture, violating his 14th Amendment Due Process Rights and Rights under Virginia Law;

F. Major Back and Captain Turner disregarded and created a serious risk of harm, interfered with my mental health treatment and safety, ignored a serious health need and breached the duty of care they owed plaintiff. As a result of Major Back's and Captain Turner's deliberate indifference, reckless disregard and/or

alternatively negligence, gross negligence, willful and wanton negligence, plaintiff suffered and suffers severe injury to his penis including multiple unsuccessful surgeries severe, acute and chronic pain, panic attacks, nightmares and sleepless nights, depression, post traumatic stress, spasms, impotence and stricture violating his 14th Amendment Due Process Rights and Rights under Virginia Law. The defendants are also responsible for officers Law (Jr), Law (Sr.) Harris's and Lieutenant Newsome negligence under respondeat Superior;

G. As a result of Superintendent Ted Hull's deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and suffers severe injury to his penis including multiple unsuccessful surgeries, severe, acute and chronic pain, panic attacks, nightmares, sleepless nights, depression, post traumatic stress, spasms, impotence Stricture Violating his 14th Amendment Due Process Rights and Rights under Virginia Common Law, Superintendent Hull is also responsible for officers Law (Jr) Law, (Sr.) and Harris and Lt. Newsome's negligence; and for negligent hiring and training;

H. Northern Neck Regional Jail and its Jail Board are vicariously liable for defendants actions as their Supervisors and employers and for negligent hiring and training;

84. Wherefore plaintiff demands that defendants be held individually, ~~and~~ jointly and severally liable in their individual and official capacities, in the amount of 1

Million in compensatory and 1 million in punitive damages and for such other and further relief as deemed appropriate.

## Cause of Action - Equal Protection

85. Its ironic that plaintiff, the riskiest and most self injurious inmate in the jail was the only one categorically not allowed constant observation. Plaintiff watched and heard inmates get whisked to a constant observation cell from punitive segregation time and time again with absolutely no hesitation. Jail officials told plaintiff that Superintendent didnt like plaintiff and that it "aint good to get on the Superintendent's bad side". The Superintendent, major Back, Captain Turner and counselor Keith Johnson denied plaintiff equal protection under the law which violated his Constitutional Rights. Their actions also amounted to negligence, gross negligence, willful and wanton negligence. Their actions caused plaintiff to suffer and suffered severe injury to his penis including multiple surgeries, severe acute and chronic pain, sleepless nights, nightmares, panic attacks, post traumatic stress, depression, spasms, impotence;

86. Northern Neck Regional Jail and its Jail Board are vicariously liable and for negligent hiring and supervision;

87. Wherefore plaintiff demands that the said defendants be held individually, jointly and severally liable in their individual and official capacities in the amount of 1 million in compensatory and 1 million in punitive damages and for such other -

and costs and such other and further relief as deemed appropriate;

## Cause of Action

88. Even a lay person would know that having a 3 inch (4.1 cm) corrugated piece of a jagged leg shackle in a highly sensitive area like the inside of a persons penis would result in pain and injury yet no one in the Jail did absolutely nothing. The defendants not only did absolutely nothing but they forced a diaper on him duct taped his body then left him like this for almost an entire month. Their actions or omissions were shocking. They refused to take any of his medical complaints. The defendants actions or omissions amounted to denial delay and/or interference

A. As a result of Dr. Dudley's deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and continues to suffer severe, acute and chronic pain, panic attacks, nightmares, sleepless nights, depression, post traumatic stress which violated his rights under the 14th Amendment and Virginia common Law and malpractice statues of Virginia;

B. As a result of Nurse Hryns deliberate indifference, reckless disregard, and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and continues to suffer severe, acute and chronic pain, panic attacks, sleepless-

nights, depression, post traumatic stress, nightmares which violated his rights under the 14th Amendment to the US Constitution and under Virginia common law;

C. As a result of Nurse Vaughan's deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and continues to suffer severe, chronic and acute pain, nightmares, sleepless nights, post traumatic stress, depression which violated his rights under the 14th Amendment to the US Constitution and under Virginia Common Law;

D. As a result of EMT Jeter's deliberate indifference, reckless disregard, and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and continued to suffer severe, chronic and acute pain, nightmares, sleepless nights, depression, post traumatic stress which violated his rights under the 14th Amendment and Virginia Common Law;

E. As a result of EMT Barnes deliberate indifference, reckless disregard, and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and continues to suffer severe, acute and chronic pain, nightmares, sleepless nights, post traumatic stress and depression which violated his 14th Amendment rights under the U.S. Constitution and Virginia common law;

F. As a result of EMT Shelton's deliberate indifference, reckless disregard and/or alternatively negligence, gross

negligence, willful and wanton negligence plaintiff suffered and continues to suffer severe, acute and chronic pain, nightmares, sleepless nights, post traumatic stress, and depression which violated his rights under the 14th Amendment to the U.S. Constitution and his rights under Virginia's Common law;

G. As a result of Major Back's (AKA Deputy Superintendent) deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and continues to suffer severe, chronic and acute pain, sleepless nights, nightmares, post traumatic stress and depression which violated his 14th Amendment rights and rights under Virginia Common law;

H. As a result of Captain Turners deliberate indifference reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and continues to suffer severe, chronic and acute pain, panic attacks, post traumatic stress, nightmares, sleepless nights and depression which violated his 14th Amendment and Virginia common law rights;

I. As a result of Superintendent's deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and continues to suffer severe, chronic, and acute pain, nightmares, sleepless nights, post traumatic stress, panic attacks and depression

which violated his 14th Amendment rights and rights under Virginia Common law;

J.  As a result of Inmate Services Director Amy Dameron's deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and suffers severe, chronic and acute pain, sleepless nights, nightmares, post traumatic stress, panic attacks and depression which violated his 14th Amendment rights and rights under Virginia's common law;

K.  Northern Neck Regional Jail and Northern Neck Regional Jail Board are vicariously liable as defendants supervisors and employers and for negligent training and hiring;

89. Wherefore plaintiff demands the defendants and each of them to be held individually severally and/or jointly liable for 500 thousand in compensatory and punitive damages, for declaratory relief, cost and for such other and further relief as deemed appropriate.

## Claim, Facts and Cause of Action

90. Sometime near the midpoint of October 2017 or about all the way to January 8th 2018 or about Major Back, Superintendent Ted Hull, Captain Turner Luetenant Newsome, Luetenant Luna, Sergeant Taylor sergeant Chatham and all other officers —

had ordered, directed, condoned, allowed plaintiff to be put in and maintained in five point restraints or the equivalent of and to be duct taped;

91. Back starting in October of 2017 Luetenant Newsome told plaintiff that he got permission from Major Back and Superintendent Hull to chain plaintiff to his bed;

92. With that permission Luetenant Newsome chained both of plaintiff's hands and feet to either side of his bed with a waist chain connected to his waist which was then chained to the bed;

93. Sometimes sergeants Chatham and Taylor, Luetenant Luna, officer Houchin and others would add additional chains on top of these;

94 This would pretty much be plaintiff's position all the way until January 8th, 2017 or about;

95. However on December 13th 2017 after plaintiff broke his shackles he was brought back into his cell wherein first a regular prison jumpsuit was placed on him followed by a pair of heavy duty thick carhart overalls by Luetenant Newsome;

96. Luetenant Newsome then forced plaintiff to put

a puffy winter Carhart coat on which was then zipped up to plaintiffs Neck line;

97. Luetenants Luna and Newsome then orderd plaintiff to put his arms at his side wherein they directed him to begin Spinning around as Luetenant Newsome layered his body with duct tape;

98. While this was going on Major Back and Captain Turner stood in the background along with other staff;

99. Luetenant Newsome then looked back towards Captain Turner to See if Turner approved of how immobilized plaintiff was;

100. Luetenant Newsome then asked officer Buntin what he thought in terms of the tightness of the duct tape;

101. Buntin then stepped forward and directed plaintiff to spin as he decided to make the tape much tighter;

102. With my torso "snow suited" and duct taped plaintiff was then chained back up to the bed five point re-straint style as previously mentioned;

103. Plaintiff was told that he could only get up out of the bed every three to 6 hours to walk around for 5 minutes by sergeant Chatham, however, --

everytime officer Williams, Houchin and Sergeant Taylor worked he was invariably and categorically denied;

104. Sergeant Chatham and Luetenant Newsome routinely ignored plaintiff's request to get out of the restraints which resulted in plaintiff being left in the same position for 12 to 24 hours straight while he was chained and duct taped to the bed;

105. Officer Buntin told other officers in front of plaintiff on December 13, 2017 after plaintiff was duct taped that per Captain Turner plaintiff only is allowed to walk around "for five minutes or about once every 24 hours;"

106. Since Captain Turner, Luetenant Burton and officer Buntin on multiple ocassions had threatened to plaintiff that "once you go low, we will go lower", upon information and belief plaintiff submits that Captain Turner was denying plaintiff walk around time as punishment over his (and the Jail's Administrative Staff) anger that plaintiff broke the leg shackles;

107. As a result plaintiff was denied the ability to walk around by officers Thomas, Buntin and others;

108. Several times when plaintiff requested to be removed permanently from the restraints he was told by Luetenant Newsome, Captain Turner and Sergeant Chatham that he had to wait until Superintendent Hull returned from his vacation in -

in Texas before he could be permanently taken out of the restraints   including duct tape   even though the said three (Newsome, Turner and Chatham) had agreed to plaintiff that he hadn't been getting in any trouble for weeks and as such should have been out of the restraints;

109. Luetenant Newsome told plaintiff that he was betting that Superintendent Hull will just go ahead and extend his Christmas vacation on into the New Years if he was smart;

110. Plaintiff was removed out of restraints on January 8th, 2018 or about;

## Cause of Action

111. The defendants Including Captain Turner, Major Back, Superintendent Hull, Luetenants Newsome, Luna, Sergeant Chatham, Sergeant Taylor Officers Buntin, Houchin, Williams acted with deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence and per se negligence by unlawfully, excessively and cruelly restraing complainant. The said defendants had no legal authority to put and/or maintain Complainant in five point restraints (or any restraints) or to have snow suited and duct taped plaintiff's –

body or to have maintained such. Complainant never recieved notice or a hearing, the defendant's never obtained permission from the Virginia Department of Corrections, the defendants did not follow their own rules and regulations and/or industry guidelines and there is no legal authority to duct tape a person's body. The defendants utilized the restraints, put and maintained complainant in restraints illegally without cause and for excessively long periods for no rational or legit purpose as a form of passive agressive ness, "reign you in" street justice, corporal and unlawful punishment and as a hamfisted alternative to constant observation. These egregious and illegal conditions were chronically and severely aggravated by the fact that defendants and/or defendant's staff routinely left complainant in these conditions with un-usually painful and severe injuries to his body. Virginia Law requires all Regional Jails to obtain permission from the Virginia Department of Corrections to place inmates in certain restraints. Defendants purposefully did not seek said permission because they knew they would not have recieved it

Defendants actions or omissions resulted in acute, chronic and severe pain, sleepless nights, depression, post traumatic stress, nightmares, panic attacks, paranoia which violated plaintiff's rights under the 4th and 14th Amendments, State law including Department of Correction guidelines, their own rules and regulations –

as well as Virginia common law

112. Wherefore plaintiff requests the defendants and each of them be held individually, jointly and severally liable for 200 thousand in compensatory and 250 thousand in punitive damages, declaratory relief, costs and other such and further relief as deemed appropriate and Northern Neck Regional Jail and its Jail board is vicariously liable for defendants actions and for negligent training and hiring.

## Claim and Cause of Action

113. Four about over 4 months straight from September 12, 2017 or about to January 8th 2018 or about Counselor Keith Johnson, major Back, Captain Turner and Superintendent Hull ordered, sanctioned, condoned implicitly and/or explicitly their subordinate staff or otherwise co-workers leaving the blinding lights on in plaintiffs cell for twenty four hours a day which made it virtually impossible for plaintiff to sleep and caused headaches;

114. When plaintiff repeatedly complained to officers Nelson, Buntin, Houchin, sergeant Taylor, Sergeant Chatham, officers Smith, Ball, Gray, Tinder he was told that the lights stay on per Major Back and Superintendent Hull as well as Captain Turner;

115. Plaintiff was in punitive segregation while this

was going on;

116. When plaintiff tried to complained to Counselor Keith Johnson, his response was that the lights must stay on;

Cause of Action

117. As a result of defendants deliberate indifference, reckless disregard and/or alternatively negligence, gross negligence, willful and wanton negligence plaintiff suffered and suffers sleepless nights for weeks, severe acute chronic irritability, chronic headaches and migraines, depression, anxiety which violated his Due Process Rights and rights under Virginia law

A. Northern Neck Regional Jail and its Jail Board are vicariously liable and for Negligent hiring and supervision

118. Wherefore plaintiff requests the defendants to be held liable for compensatory and punitive damages jointly and severally for an amount to be determined by the Court but no less than 50 thousand, and for declaratory relief and cost and other relief as deemed appropriate;

~~III~~. Claim and Cause of Action

119. On December 5, 2017 plaintiff was brought to the

jail's medical unit where instead of brining plaintiff
to an outside hospital Dr. Dudley tried to pull
several pieces (one of which was unusually sharp) of
metal out of plaintiff's penis even though plaintiff
adamantly objected;

120. Plaintiff told Dr. Dudley that his penis was
infected, pussy, painful to the touch with blood coming
out (residue of which was on plaintiff's penis which Dr.
Dudley and Nurse Vaughan could clearly see), that
the metal was very sharp, that he had not seen where
the metal had migrated to, that he had no urologic
training and that the jail was a completely in appropriate
place to attempt to blindly perform a surgery;

121. However an angry Nurse Vaughan who was in the
room doing the preparation quickly intervened and
yelled Lay down now! We're taking it out right
here! You shouldn't have put it in there!"

122. Nurse Vaughan and Sergeant Moore then
proceeded to try to hold plaintiff down;

123. While Nurse Vaughan and Sergeant Moore
held plaintiff down Dr. Dudley quickly yanked on
a string that was attached to some of the metal
in plaintiff's penis;

124. Blood started to squirt everywhere and plaintiff screamed to the top of his lungs;

125. There was absolutely no pain medication, no numbing agent, no nothing;

126. After about five seconds of screaming in pain Dr. Dudley then backed off and apologized to plaintiff;

127. Plaintiff then was transported to Riverside Tappahannock Hospital where Dr. Dudley sought to remove the objects himself;

128. In doing so Dr. Dudley did not utilize the aid of a camera as is standard practice for trained urologists;

129. Instead Dr. Dudley blindly went into plaintiff's penis and as a result left a sharp piece of plastic in plaintiff's penis;

130. In his hospital notes Dr. Dudley acknowledges that he could still feel objects in plaintiff's penis yet he did not attempt to go back in plaintiff's penis to get them out

131. Dr. Dudley did not provide plaintiff with any pain medication;

132. Instead plaintiff was returned back to the jail with a piece of serrated plastic still lodged in his penis which caused severe pain for about eleven hours until it finally dislodged on its own in the toilet;

133. So that jail officials didnt have to keep cleaning up plaintiff's bowel and bladder movements in his bed as a result of plaintiff both routinely not being able get up and use the bathroom (due to staff claiming to not have time to get him up out of his restraints) and the fact that the suicide gown that he had on was open ended (like a dress), major Back, Superintendent Hull Captain Turner with Counselor Johnson's implicit sanction, directed staff to swap the suicide gown and instead put a pair of pants on plaintiff so that his bowel and/or bladder movements would now be confined inside of his pants instead of right on the bed.;

134. The swapping of the suicide gown with a regular inmate jumpsuit (pants) started happening in November 2017 and was repeated throughout to January 8, 2018 when plaintiff was released from restraints;

135. major Back, Captain Turner and Superintendent Hull (with tacit approval of mental health counselor Keith Johnson) allowed plaintiff to have access to metal buttons on the jumpsuit despite his well known history of

injuring himself with metal and other objects;

136. Plaintiff removed one of the metal buttons off of his pants jumpsuit then jammed it down into his penis

137. Prior to Dr. Dudley, Nurse Vaughan and Sergeant Moore attempting to remove the metal from plaintiff's penis, upon information and belief (the source being the statement of the inmate in question) Nurse Vaughan had forced another inmate to remove a metal button from his penis on his own in her presence just a few weeks prior to the relevant incident;

138. The defendants actions or omissions amounted to negligence, gross negligence and/or willful and wanton negligence which caused plaintiff to suffer severe, acute and chronic pain, depression, nightmares, sleepless nights, post traumatic stress panic attacks;

139. Northern Neck Regional Jail and its Jail Board are vicariously liable and for negligent training and hiring;

140. Wherefore plaintiff requests the defendants be held jointly and severally liable for 80 thousand in punitive and compensatory damages and for such other relief as deemed appropriate

## Claim

141. Officer Gray and others routinely allowed plaintiff to eat his meals inside of his cell to avoid the sometimes complex and cumbersome process of taking off all of the restraints then having to put them all back on once he was done eating;

142. The typical routine from start to end involved officer Gray asking plaintiff whether he wanted to get up and go sit at the table in the day room to eat his meal or eat it inside of his cell;

143. Sometimes plaintiff would get up to go eat in the day room while other times he chose to eat inside his cell;

144. When plaintiff chose to eat in his cell officer Gray would take the restraint mittens and handcuffs off of plaintiff's hands and plaintiff would start the process of eating for the ten to fifteen minutes that he was given to eat

145. While he ate officer Gray would often leave his cell leaving him unsupervised while he went to do other things even though officer Gray was acutely aware of plaintiff's risks and recent history;

146. During one of those unsupervised occasions sometime -

between December 23 2017 and December 31, 2017
or about, plaintiff broke the zipper off of the coat
that was forced on him by Captain Turner, Major Back
Luetenants Luna and Newsome and others, then jammed it
down into his penis alongside the leg shackle that was
already there which severely aggravated the pain and
which was confirmed by x ray on January 8, 2018 or about
at Riverside Tappahannock Hospital;

147. Similar to paragraphs          above, when plaintiff com-
plained to EMTs Jeter, Barnes, Shelton and Nurse Hryn between
December 23, 2017 and January 8th, 2018 or about he received
absolutely no assistance for his pain so he asked officers
Thomas, Veney (male officer), and Shropshire to email the medical
director (AKA Inmate Services Director) Amy Dameron his pain,
infection and delay concerns which they (the officers)  alleged
that they did;

148 Major Back, Captain Turner and Counselor Johnson sanctioned
a coat with a zipper being placed on plaintiff even though
plaintiff had had a metal button removed from his penis less
than one week earlier on 12/5/17 which he had removed
from the pants that the defendants put on him despite the
restraints;

149. Upon information and belief Major Back, Captain Turner,
and Superintendent Ted Hull were more overcome by the desire
to rachet up the punishment on plaintiff by "snow suiting" —

and duct taping him up (even if that meant him likely figuring out a way to remove the zipper as he had done so many other things) than legitimate concern for his safety and well being;

150. On several prior ocassions Captain Turner, Lieutenant Burton, officer Buntin and others had threatened to plaintiff that "each time you go low we will go lower" which plaintiff upon information and belief strongly and unequivocally took to mean to plaintiff that every time he injured himself and they had to deal with it the punishment was going to get worser;

151. As a result of officer Gray's, major Back's, Captain Turner's, Counselor Johnson's and Superintendent Hull's, EMTs Jeter's, Barne's, Shelton's, Nurse Hryn's negligence, gross negligence, willful and wanton negligence which breached the duty of care they owed to plaintiff, plaintiff suffered severe, acute and chronic pain, post traumatic stress, sleepless nights injury to his penis and depression violating his rights under Virginia Common law

152. Northern Neck Regional Jail and it's Jail Board are vicariously liable as defendants employer and supervisor;

153. Wherefore plaintiff requests the defendants to be held jointly and severally liable for 75 thousand in punitive and compensatory damages and cost and other relief as deemed appropriate.

Respectfully Submitted

Dated: 11-27-18

X _Ricky Butler_

Ricky Butler - plaintiff

Livingston County Jail
4 Court Street
Geneseo, New York 14454



In The United States District Court
Eastern District of Virginia

Ricky Butler, plaintiff                    Verification.

                                    CASE#1:18-CV-1525(TSE/JFA)
- against -                                          State of New York  ss:
                                                     County of Livingston

Northern Neck Regional Jail,
Northern Neck Regional Jail Board, Superintendent Ted Hull
Deputy Superintendent Back, Correction officer Harris, Correction officer Gray,
Correction officer Law, (jr), Correction officer Law (Sr.)
Chief of Security Turner, Correction officer Williams,
Emergency medical Technicians Barnes, Jeter, Shelton
Correction officer Houchin, Correction officer Buntin,
Correction officer Garner, Nurses Vaughan and Hryn,
Sergeants Chatham and Taylor, Luetenents Luna and Newsome
Doctor James Dudley, Inmate Services Director Amy Dameron

    Ricky Butler being duly sworn deposes and says that deponent is the
plaintiff in the above entitled complaint, that he has read the foregoing
complaint and knows the contents thereof, that the same is true to deponents
own knowledge, except as to matters therein stated upon information and belief
which matters deponent believes to be true

Subscribed and sworn to before me on
this 27th day of November 2018                              11/27/18
                                              Ricky Butler

PATRICIA D. AVERY
Notary Public - State of New York
Qualified in Livingston County
Reg. No. 01AV6125624
My Commission Expires April 18, 20 21

## Consent

I do not consent to trial by magistrate judge pursuant to 28 U.S.C. 636(c) - ___No✓___

## Relief

I understand that a in a Section 1983 action the Court cannot change my sentence, release me from custody or restore my good time. I understand I should file a petition for writ of habeas corpus if I desire this type of relief  x _RB_
Initial

## Places of Incarceration

I have been residing at Livingston County Jail, 4 Court Street, Geneseo, N.Y. 14454 for the last 30 days

Prior to that I was housed at Niagara County ~~Jail~~ Correctional Facility located at 5526 Niagara street Ext., Lockport N.Y 14095 (or B.OX 496 Lockport NY 14095) - Both addresses are used for the Jail (housed for 9 months at Jail)

# Prisoner Authorization

I Ricky Butler request and authorize the agency holding me in custody to send to the Clerk of the United States District Court for the Eastern District of Virginia a certified copy of my prison account statement for the past 6 months. I further request and authorize the agency holding me in custody to calculate the amounts specified by 28 U.S.C. Section 1915 (b), to deduct those amounts from my prison Trust Fund account (or institutional equivalent), and to disburse those amounts to the United States District Court for the Eastern District of Virginia. This Authorization Shall apply to any agency into whose custody I may be transferred and to any other District Court to which my case may be transferred and by which my poor person application may be decided.

I understand that by signing and returning this Notice to the Court, THE ENTIRE COURT FILING FEE OF 400.00 $ WILL BE PAID IN INSTALLMENTS BY AUTOMATIC DEDUCTIONS FROM MY PRISON TRUST FUND ACCOUNT EVEN IF MY CASE IS DISMISSED OR EVEN IF I VOLUNTARILY WITHDRAW THE CASE.

PATRICIA D. AVERY
Notary Public - State of New York
Qualified in Livingston County
Reg. No. 01AV6125624
My Commission Expires April 18, 2021

x _Ricky Butler_   Dated: 11/27/18
Ricky Butler ~ Plaintiff

_Patricia S Avery_

Sworn to before me on
this 27th day of November 2018,

Inmate I.D# 254514
Livingston County Jail
4 Court Street
Geneseo, New York 14454

Ricky Butler
11/27/18