IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RICKY BUTLER, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-1525-MSN-JFA |
| | ) |
| NORTHERN NECK REGIONAL JAIL, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

**<u>MEMORANDUM OPINION</u>**

This matter comes before the court on Defendant's Renewed Motion for Summary Judgment on Behalf of Defendant Christopher Laws, Jr., Dkt. No. 120, and Plaintiff's Incorporated Motion for Summary Judgment in Favor of Plaintiff. Dkt. No. 201.

For the reasons stated below, the factual record demonstrates that no genuine issue of material fact exists as to the failure to protect and gross negligence claims against defendant Christopher Laws, Jr. ("Officer Laws, Jr."). Accordingly, summary judgment must be granted with respect to these claims.

**I.      BACKGROUND**

**A.      Procedural History**

Plaintiff initiated this action, *pro se*, in 2018 asserting three claims:[1] (1) deliberate indifference to plaintiff's serious medical needs; (2) failure to protect plaintiff from self-injury; and (3) negligence, gross negligence, and willful and wonton negligence under Virginia state law. *See* Mem. Op. (Dkt. No. 83). The Court granted summary judgment on plaintiff's deliberate

---

[1] As discussed in the Court's Memorandum Opinion on Defendant's Motion for Summary Judgment (Dkt. No. 45), plaintiff's complaint is difficult to comprehend. Thus, this recitation of the claims against defendant is based on a deferential reading of plaintiff's complaint. *See* Mem. Op. (Dkt. No. 83) at 17.

indifference, and negligence and willful and wonton negligence claims, and denied summary judgment on plaintiff's failure to protect and gross negligence claims. *See id.* at 45. The Court allowed defendant to renew his motion for summary judgment on plaintiff' failure to protect and gross negligence claims to provide additional evidence to the extent available. *Id.* The Court reasoned that "it is conceivable that defendants may not have identified all of the evidence relevant to the two claims against Officer Laws, Jr. that survive summary judgment." *Id.*

On April 29, 2020, defendant filed a Renewed Motion for Summary Judgment. Dkt. No. 120. In support of his Renewed Motion, defendant filed six exhibits not previously submitted for consideration by the Court. *See* Dkt. Nos. 122-1 through 122-6.[2] On January 31, 2022, plaintiff filed his opposition to defendant's renewed motion and moved for summary judgment in favor of plaintiff. *See* Pl. Opp. & Mtn. (Dkt. No. 201). In support of his motion for summary judgment, plaintiff incorporates affidavits previously considered by the Court in its Memorandum Opinion on Defendants' Motion for Summary Judgment (Dkt. No. 45). *See* Pl. Opp. & Mtn. at 5. In the two-year period between defendant's Renewed Motion for Summary Judgment and plaintiff's opposition and incorporated motion for summary judgment, plaintiff was appointed legal counsel and a guardian *ad litem* to represent his interests. *See* Dkt. Nos. 162, 183. Accordingly, plaintiff is currently represented by counsel.

The Court has reviewed and considered plaintiff's Complaint, its Memorandum Opinion, Defendants' Renewed Motion for Summary Judgment, Plaintiff's Opposition to Defendant Laws

---

[2] These exhibits are: (1) the Affidavit of Jonathan English, current Chief of Security at Northern Neck Regional Jail; (2) a handwritten log dated December 13, 2017 from defendant's assignment to the N pod housed in D Building. It has been highlighted six times to feature the times and entries where defendant conducted a security scan of N pod; (3) an Incident Report submitted by defendant on December 13, 2017 at 12:40 p.m. after he discovered plaintiff had chewed through the restraint mitt; (4) an Incident Report submitted by Officer Divine Veney on December 13, 2017 at 3:35 p.m. after plaintiff informed Officer Veney that he had inserted pieces of metal into his orifices; (5) an Incident Report submitted by Lt. Newsome on December 13, 2017 at 4:00 p.m. detailing the steps taken by Officer Veney, himself, and the medical team in response to plaintiff's injuries; and (6) the Supplemental Affidavit of Christopher T. Laws, Jr.

Jr.'s Renewed Motion for Summary Judgment, Plaintiff's Incorporated Motion for Summary Judgment in Favor of Plaintiff, and Defendant's Reply. Accordingly, the matter has been adequately briefed and is ripe for disposition.

    **B.**    **Factual Background**

Plaintiff Ricky Butler, formerly incarcerated at Northern Neck Regional Jail ("NNRJ") in Warsaw, Virginia, has a history of inflicting self-harm despite the many good faith attempts of the officials at NNRJ to prevent injury. *See* Mem. Op. at 8–16. Officials at NNRJ "sought to balance the risks posed by plaintiff's acts of self-harm with the risks posed by NNRJ's efforts to stop that behavior." *Id.*

To that end, on December 13, 2017, plaintiff was housed in N pod where he was restrained by at least one pair of shackles and by mittens duct-taped to each of his hands. Compl. (Dkt. No. 1) ¶¶ 44, 46. Defendant was assigned to monitor N pod where plaintiff was housed. Def. Mem. (Dkt. No. 122) at 2. Under the Minimum Standards for Jails and Lock Ups, defendant was required to conduct a security check of N pod twice per hour at random intervals. *Id.*; *see* 6 Va. Admin. Code § 15-40-1045. On December 13, 2017, defendant began his duty on N pod at 12:30 p.m. Dkt. No. 122-2 at 1. At or about 12:40 p.m. defendant conducted his first security scan of N pod when he noticed plaintiff had chewed through his restraint mitt. *Id.* Defendant immediately notified his superiors, Sgt. Knight and Lt. Newsome. *See* Def. Mem. at 2; Dkt. No. 122-3. Shortly thereafter, defendant submitted an Incident Report describing the events. Dkt. No. 122-3. Defendant took no further steps at that time because he did not have the authority or ability to replace plaintiff's restraints. Def. Mem. at 2.

Defendant conducted a security scan of N pod five more times while on duty that day: (1) at 12:57 p.m. defendant entered N pod with meal trays and did a security scan; (2) at 1:17 p.m.

defendant conducted a security scan of N pod; (3) at 1:25 p.m. defendant entered plaintiff's cell to feed him; (4) at 2:30 p.m. defendant conducted a security scan of N pod; and, (5) at 3:04 p.m. defendant entered plaintiff's cell. *Id.* at 2–3 Only at 1:25 p.m. and at 3:04 p.m. did defendant enter plaintiff's cell to conduct a security scan. *Id.* at 3.

When defendant entered plaintiff's cell to feed him at 1:25 p.m., defendant removed the mitts to enable plaintiff to eat. Defendant then replaced the mitts at the end of the meal. *Id.* Defendant does not recall if the damaged mitt had been replaced with a new one. *Id.*

Officer Divine Veney assumed defendant's role at 3:10 p.m. *Id.* When Officer Veney entered plaintiff's cell at 3:35 p.m., plaintiff told Officer Veney that he had injured himself. *Id.* Officer Veney promptly filed an Incident Report. Dkt. No. 122-4.

## II.    LEGAL STANDARD

Summary judgment is proper where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Tech. Apps. & Servs. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists, and that summary judgment should not be granted in favor of the moving party. *Anderson*, 477 U.S. at 250. A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

A renewed motion for summary judgment must be supported by new material. *Wechsler v. Hunt Health Sys., Ltd.*, 198 F. Supp. 2d 508, 514 (S.D.N.Y. 2002). Because the party renewing its motion is limited to issues relating to the new material, the Court will not revisit its findings with

respect to issues decided in the first decision, "because those issues, for summary judgment purposes, comprise the law of the case." *Id.*

### III. DISCUSSION

#### A. Failure to Protect Claim

Plaintiff argues that defendant was deliberately indifferent to plaintiff's risk of self-harm. Defendant, plaintiff alleges, failed to conduct a security check as frequently as plaintiff's condition required; failed to notice defendant had escaped from his restraints; and, failed to ensure plaintiff was in a safe condition before the end of defendant's shift. Pl. Opp. & Mtn. at 3. Plaintiff argues that upon finding he had chewed through his gloves, defendant took no action to protect him apart from notifying defendant's supervisor. *Id.* at 4.

Defendant counters that he attempted to ensure plaintiff's safety by immediately informing his supervisors plaintiff had chewed through the restraint mitt and by performing regular security checks. Def. Mem. at 5. Further, defendant states that at no time did he observe plaintiff had broken his shackles. Def. Reply (Dkt. No. 202) at 5.

"[P]rison officials have a duty to protect prisoners [and federal detainees] from self-destruction or self-injury," *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992), and "must take *reasonable* measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (emphasis added). To prove a failure to protect claim under the Fourteenth Amendment, plaintiff must establish that he was "incarcerated under conditions posing a substantial risk of serious harm" and that defendant acted with "deliberate indifference." *Id.* at 834. An officer is deliberately indifferent to a substantial risk of self-harm to a detainee when that officer "knows of and disregards" the risk. *Id.* at 837. Thus, the prison official must "subjectively recognize[ ] a substantial risk of harm . . . [and] subjectively recognize[ ] that his actions were

inappropriate in light of that risk." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal quotation marks and citations omitted).

This twofold showing of actual, subjective knowledge may be made, however, using circumstantial evidence. *Id.* As such, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Yet, as the Fourth Circuit has emphasized, "it is not enough that a reasonable officer *would have* found the risk to be obvious." *Parrish ex rel. Lee*, 372 F.3d at 303 (emphasis in original). Instead, "the risk of injury must be so obvious that the fact-finder could conclude that the [officer] *did* know of it because he could not have failed to know of it." *Id.* (internal quotation marks and citation omitted). Similarly, "a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate." *Id.* But, again, "it is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient." *Id.*

The Court previously found there was a genuine dispute as to whether defendant failed to protect plaintiff from self-injury based on the following facts: (1) Plaintiff alleged in his complaint that he warned defendant of his intention to "'do something real crazy to himself,'" but defendant "merely smirked and walked away" Mem. Op. at 15 n.33, 33–34 (quoting Compl. ¶ 43); (2) Defendant "allegedly skipped several of his observation checks, failing 'to show up for an hour or so one [sic] one occasion.'" *Id.* at 33 (quoting Compl. ¶ 47); (3) defendant allegedly noticed that plaintiff had broken free of his mitts and shackle, and "shook his head smirking and casually continued on his way." *Id.* at 33–34 (quoting Compl. ¶ 48). The only evidence offered by defendant in his original motion for summary judgment to refute the allegations, the Court reasoned, was

defendants' own affidavits. *Id.* at 34. As a result, the Court found it "inappropriate to determine the credibility of either party's sworn statement" at this stage of the litigation. *Id.*

The Court concluded a jury could find that defendant was aware of the danger plaintiff posed to himself, but "nevertheless left plaintiff unsupervised in a dangerous situation." Mem. Op. at 34. Specifically, the Court found the then-current summary judgment record alleged facts that "plaintiff warned [defendant] of his intention to 'do something real crazy to himself'" sufficient to establish a genuine issue of material fact "as to whether [defendant] failed to protect plaintiff from injury." *Id.* at 34–35.

Defendant's renewed motion for summary judgment and the evidence submitted alters the Court's previous conclusion. It is now clear from the record that defendant took reasonable measures to ensure plaintiff's safety.

Plaintiff argues defendant was deliberately indifferent by

> 1) not having . . . checked on [plaintiff] as often as his condition clearly required or even as often as ordered, 2) his [plaintiff's] escape from his restraints having gone shockingly unnoticed by Officer Laws, and 3) Officer Laws leaving without ensuring he [plaintiff] was restored to safe conditions.

Pl. Opp. & Mtn. at 3. However, plaintiff has not established that the totality of defendant's actions was "so patently inadequate" that an inference of deliberate indifference is warranted. *Parrish ex rel. Lee*, 372 F.3d at 303. While it is undisputed that the D building log states defendant did not conduct a security scan between 1:25 p.m. and 2:30 p.m., the building log also states that defendant was conducting security checks in other pods at that time. Dkt. No. 122-2 at 1–2; *see Laube v. Haley*, 234 F. Supp. 2d 1227, 1245 (M.D. Al. 2002) (finding "having only a few staff members to supervise inmates" is not per se unconstitutional). It is entirely reasonable that defendant would continue to perform his security duties in other pods after notifying his superiors that plaintiff had chewed through the mitt given defendant "did not have the authority or ability to replace

[plaintiff's] restraints and could act only at [his] supervisors' directive." Dkt. No. 122-1 ¶ 6. It is unreasonable to require defendant to abandon his duties to the other prisoners' safety in favor of a potential danger—the danger that plaintiff would injure himself. *See Aaron v. Reed*, 2017 WL 693336, at *8 (S.D.N.Y. Jan. 23, 2017) (no valid failure to protect claim where an officer left his post in response to a call for assistance from another officer).

Additionally, there is no evidence in the record that defendant was aware plaintiff had escaped his shackles or obtained an object that could be used for self-harm. At most, the record reflects defendant observed plaintiff had destroyed his duct-taped mitts and defendant filed an Incident Report immediately upon discovering the chewed mitts. Dkt. No. 122-3. Further, defendant took steps to ensure plaintiff's safety when defendant entered plaintiff's cell to conduct a security check at 3:04 p.m. Dkt. No. 122-2 at 2. Taken as a whole, there can be no genuine dispute that defendant took "*reasonable* measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (emphasis added) (internal quotation marks and citations omitted). Even assuming defendant *did* fail to show up for an hour or so on one occasion, this alone does not create a material issue in dispute based on the totality of the steps defendant took to ensure plaintiff's safety. Accordingly, summary judgment in favor of defendant is appropriate on plaintiff's failure to protect claim.

  **B.**  **Plaintiff's Gross Negligence Claim**

Plaintiff alleges that defendant was grossly negligent in the way defendant monitored him once defendant knew plaintiff had torn through his protective mitts. Defendant argues that he acted reasonably under the circumstances by completing regular security checks and notifying his supervisors of the damaged mittens that threatened plaintiff's security. Def. Mem. at 7. Plaintiff in turn fails to address the gross negligence claim in his Opposition and Incorporated Motion. *See*

*generally* Dkt. No. 200. This is not dispositive, however, for "[e]ven if the nonmoving party fails to respond to the motion for summary judgment, or portions of that motion, a court cannot grant the motion solely on the basis that it was conceded." *Wren v. U. S. Dep't of Just.*, 282 F. Supp. 3d 216, 222 (D.D.C. 2017) (citing *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016)). The Court must determine for itself whether summary judgment is appropriate. *Id.*

Gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004). Accordingly, a "claim for gross negligence must fail as a matter of law" when a defendant "exercised some degree of care." *Elliott v. Carter*, 292 Va. 618, 622 (2016); *Malpica v. Kincaid*, No. 1:21-CV-417, 2022 WL 503966, at *7 (E.D. Va. Feb. 18, 2022) (Ellis, J.).

The Court previously found that "a fact finder could conclude that the behavior of Officer Laws, Jr. . . . was unreasonable and contrary to his duty to protect plaintiff and that his behavior enabled plaintiff to commit an act of self-harm." Mem. Op. at 44. Further, the Court concluded that a fact finder "might reasonably find that Officer Laws, Jr. acted in a grossly negligent manner." *Id.*

Upon consideration of the additional evidence submitted by defendant, the Court finds that there is no longer a material issue in dispute regarding whether defendant acted with gross negligence. The undisputed facts show that defendant was aware plaintiff presented a danger to himself and that the mitten, meant to protect plaintiff from self-harm, was damaged. The record also demonstrates that defendant exercised some degree of care upon noticing the damaged mitten when he promptly informed his superiors and continued to perform regular security checks.

Therefore, as a matter of law, a reasonable jury could not conclude that defendant exhibited indifference and an utter disregard for plaintiff's safety. *Cowan*, 268 Va. at 487.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment must be granted and plaintiff's motion for summary judgment must be denied. An appropriate Order shall issue.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Dated: July 20, 2022
Alexandria, Virginia